BELLA GOLDBERG *vs.* PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK.

BELLA BERMAN *vs.* SAME.

Suffolk. March 7, 1932. — May 27, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Insurance,* Motor vehicle. *Equity Jurisdiction,* To enforce liability insurance. *Waiver.*

At the hearing of a suit in equity against an insurance company under G. L. c. 214, § 3 (10), as amended by St. 1923, c. 149, § 3, to enforce the liability, created by G. L. c. 175, §§ 112, 113, of an insurance company to one who had recovered judgment against its insured in an action for bodily injuries, it appeared that it was a condition of the policy that the insured should coöperate fully with the company with respect to any claim or action against him for such injuries; and the trial judge found that the insured coöperated fully with the insurance company at least until the plaintiff's action against him was placed upon the trial list;

that the insurance company's agents had interviews with the insured about the plaintiff's claim and acquired knowledge that, being a law breaker, the insured was trying to make himself inconspicuous to the authorities; that, when the plaintiff's action against the insured was imminent for trial, the insurance company had been unable to reach the insured and its attorney withdrew his appearance for the insured and disclaimed liability under the policy by reason of violation by the insured of such condition of the policy; and that thereafter the insured was defaulted in that action, damages were assessed and judgment was entered against him. The trial judge ruled that, "having . . . acquired knowledge of actions on the part of the insured which would make it seem likely to an average person that the insured would be more than the average difficult to locate [so that he might be of assistance to the company in defending the plaintiff's claim against him], it had the duty of doing all that was reasonably possible under the circumstances to keep itself informed of means by which its requests for help could be brought home to the insured," and stated that he did not find that the defendant "did this." A decree for the plaintiff was entered, from which the defendant appealed. *Held*, that

(1) The statutory rights of the plaintiff were no greater than those of the insured against the defendant under the policy;

(2) The defendant was bound to do only what a reasonably prudent person would do to keep in contact with the insured;

(3) The judge's ruling, above quoted, was wrong in that in substance it required, for establishment of such noncoöperation on the part of the insured as would justify the defendant in withdrawing from defence of the action at law, actual knowledge by the insured of the defendant's demand for coöperation;

(4) In following his ruling, the judge did not consider and decide the proper questions of fact, namely, whether the defendant did all that it was bound to do to keep in contact with the insured, and, consequently, whether it had a right to disclaim liability;

(5) A finding that the insurer had waived its right to relieve itself from liability by withdrawing from defence of the action at law was not required as a matter of law;

(6) Because the decree was based on an erroneous view of the law as applied to the conduct of the defendant and the insured, it was reversed, and the suit was ordered to stand for a further hearing.

Two BILLS IN EQUITY, filed in the Superior Court on August 20, 1930, and described in the opinion.

The suits were heard together by *Fosdick,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material facts found and rulings made by the judge are stated in the opinion. From final decrees for the plaintiffs, the defendant appealed.

*B. A. Brickley,* (*S. P. Sears* with him,) for the defendant.
*A. J. Berkwitz,* for the plaintiffs.

WAIT, J.  On May 24, 1925, the plaintiffs were injured in an accident in which an automobile owned and driven by one Costa was in fault.  Costa was at that time insured against liability for loss or damages on account of bodily injury as the result of the ownership, maintenance or use of the automobile.  The policy was issued by the defendant. The date of issue does not appear from the record.  Actions against Costa were brought by the plaintiffs who obtained judgments against him.  Costa did not satisfy the judgments within thirty days after their entry; and, thereupon, the plaintiffs brought these bills in equity against the defendant to reach and apply in satisfaction of their judgment debts the obligation of the insurer, the defendant, basing their rights upon G. L. c. 175, §§ 112, 113, and G. L. c. 214, § 3 (10), as amended by St. 1923, c. 149.

The defendant answered admitting that such a policy issued by it was outstanding and in effect on May 24, 1925; but setting out, further, that it was a condition of the policy that Costa should coöperate with and furnish all needful and possible assistance to the insurer in connection with any claim which should be made or any action which should be brought arising out of his use or maintenance of the automobile, and that Costa had utterly failed in performance of the conditions, and, in consequence, that the defendant was relieved of liability thereunder.  The answer ignored the other allegations of the bill, and left the plaintiffs to their proof.

*Lorando* v. *Gethro*, 228 Mass. 181, and later cases following it, see *McMahon* v. *Pearlman*, 242 Mass. 367, 370, *Lunt* v. *Aetna Life Ins. Co. of Hartford*, 253 Mass. 610, *Kana* v. *Fishman*, 276 Mass. 206, 210–211, (compare *Coleman* v. *New Amsterdam Casualty Co.* 247 N. Y. 271, *Weatherwax* v. *Royal Indemnity Co.* 250 N. Y. 281, *Gerka* v. *Fidelity & Casualty Co. of New York*, 251 N. Y. 51, *Seltzer* v. *Indemnity Ins. Co. of North America*, 252 N. Y. 330,) have settled that under G. L. c. 175, §§ 112, 113, and G. L. c. 214, § 3 (10), the rights of the plaintiffs against the defendant do not rise higher than those of the assured.  If Costa broke the condition of his policy which required that he "Whenever re-

quested by the Company . . . shall aid in effecting settlements, securing information and evidence, the attendance of witnesses, and in prosecuting appeals, and shall at all times render . . . all co-operation and assistance within his power," then the defendant had a right to disclaim liability, and the plaintiffs must fail, as Costa would, in these circumstances, have failed, to recover against the defendant. A different rule applies when the proceeding is based on G. L. c. 175, § 113A, added by St. 1925, c. 346, § 4, in case of compulsory motor vehicle insurance. See *Lundblad* v. *New Amsterdam Casualty Co.* 265 Mass. 158; *Vance* v. *Burke*, 267 Mass. 394; *Warecki* v. *United States Fidelity & Guaranty Co.* 270 Mass. 233.

The trial judge found that Costa seasonably informed the defendant of the accident, made proper report thereof, turned over such papers as were served upon him, and, at least until the cases were put upon the trial list, coöperated in all needful ways. Lawyers engaged by the defendant filed appearances for Costa, made answers in the actions and filed and attended to interrogatories in them. In so doing they learned that Costa was engaged in violating the Federal prohibitory liquor laws and was trying to make himself inconspicuous to the authorities. They had difficulty in securing his presence for information and signature in the matter of interrogatories. Their experience, the judge found, "was enough to show . . . [the defendant] that it had insured a slippery customer." "I cannot find even that any request was made of him to keep the defendant informed of his whereabouts or that some address be given or other means of reaching him should be devised which would not be likely to be a source of danger to him in his illegal pursuits." The attorneys believed Costa had a defence. See *S. & E. Motor Hire Corp.* v. *New York Indemnity Co.* 255 N. Y. 69.

When the cases were nearing trial the defendant engaged Mr. Sleeper to try them. He began preparation and desired to discuss them with Costa, but, although he sent letters to such addresses as he thought might reach him and employed an investigator to search for him and conduct him to the office, he was unable to secure an interview. The letters

were returned unclaimed. They notified Costa of the pendency of the cases and requested his attendance at Mr. Sleeper's office on May 16, 1927, and at court when the cases would be in order for trial on May 18, 1927, at 10:00 A.M. Mr. Sleeper secured a continuance from the judge in charge of the trial lists until May 31, on the ground of his inability to locate Costa; but was assured the cases must then be tried. The investigator made search without success. On May 25 letters to six different addresses were sent which requested Costa's presence at Mr. Sleeper's office on May 26 and in court on that day. The places of address were all places at which the senders had some reason to believe or hope Costa might be, and they had no knowledge of any others. The request did not reach Costa through any letter. A subpoena was placed with the investigator who continued his unsuccessful search. On May 31 the cases were reached. Mr. Sleeper had the court room and corridor "paged" without finding Costa. He told the judge he was unable to locate his client after doing all he could to find him. The judge stated that the cases were reached and must be held. Mr. Sleeper said, if so, he must withdraw appearances for Costa and should disclaim liability under the policy. He filed formal withdrawals and later on the same day sent to Costa to different addresses notice of withdrawal and disclaimer of liability. The defendant authorized his conduct. None of the letters was received by Costa. On June 1, as a result of a telephone message, one of the attorneys whose appearance had been withdrawn went to the Federal court room and there saw Costa, a defendant in a case for violation of the liquor laws. He told Costa what had taken place and advised him to have a personal attorney attend to the cases. Costa said he did not care what became of them.

On May 31 counsel for plaintiffs secured continuances of the cases after the withdrawals. No motion under Common Law Rule 24 of the Superior Court (1923) for continuance owing to absence of a witness with affidavit of the testimony expected was made. The cases were again marked for trial, and, on June 2, 1930, Costa was defaulted. On June 6, 1930, damages were assessed in each case. Nothing was done

by the defendant in the cases after the disclaimer of May 31, 1927. The judge found that Costa had no written notice of withdrawal and disclaimer but had oral notice on June 1, 1927; that while "in fact trying to make himself inconspicuous to the authorities . . . I do not find that in doing so he intended to conceal his whereabouts from the defendant or made any special effort to do so." He ruled that "having . . . acquired knowledge of actions on the part of the assured which would make it seem likely to an average person that the assured would be more than the average difficult to locate, it had the duty of doing all that was reasonably possible under the circumstances to keep itself informed of means by which its requests for help could be brought home to the assured." He stated: "I do not find that it did this."

We have considered the evidence, duly reported by the stenographer, and are unable to say that the findings of fact of the trial judge are plainly wrong. His findings must stand. We think, however, that his ruling of law is erroneous. In our opinion the defendant was bound to do only what a reasonably prudent person would do to keep in contact with the insured; and that, in following his ruling, the judge did not consider and decide the proper question of fact. We think it could be found that the defendant did all that it was bound to do and that it had a right to disclaim liability. There was basis for inference that in some way, although all but one of the letters were not accepted and not delivered, Costa, or some one for him, knew of their existence, and should have inferred that he was wanted by the attorneys in charge of the cases.

The attorney who was to try the case was justified in feeling that an interview with Costa was indispensable to proper preparation for trial, and that his presence and assistance in court at the trial were essential to the defence. A refusal on Costa's part, due to personal reasons not material to the defence of these cases, would constitute lack of coöperation. *Coleman* v. *New Amsterdam Casualty Co.* 247 N. Y. 271.

It has been decided that an insurance company which

has entered upon a defence and continued in the case after breach of a condition for coöperation is not at liberty to set up the breach as a defence to proceedings by an injured person to enforce the liability. *Daly* v. *Employers Liability Assurance Corp.* 269 Mass. 1, and cases cited at page 5. Compare *Lunt* v. *Aetna Life Ins. Co. of Hartford*, 261 Mass. 469; *Gerka* v. *Fidelity & Casualty Co. of New York*, 251 N. Y. 51. See *S. & E. Motor Hire Corp.* v. *New York Indemnity Co.* 255 N. Y. 69; *Kana* v. *Fishman*, 276 Mass. 206.

Here, however, the attorneys of the insurance company withdrew from the cases when the failure to coöperate, as they viewed it, was complete, and the company immediately disclaimed. *Daly* v. *Employers Liability Assurance Corp.* 269 Mass. 1, is not controlling. There the insurer did not withdraw until after a verdict had been rendered. It took chances which this defendant did not. See also *Lunt* v. *Aetna Life Ins. Co. of Hartford*, 261 Mass. 469.

Even if it be believed that the defendant desired and sought for opportunity to disclaim, that would not defeat disclaimer if the assured failed to coöperate without collusion on the insurer's part. There is no finding of collusion here.

In view of the decisions holding the insurer to liability although a breach of the condition has occurred, the insurer is placed in a position in which it must separate itself from the defence decisively and completely if it desires to insist upon its right to disclaim upon breach of the condition. A motion for continuance might prejudice its position, if made after actual breach when the right to disclaim liability was openly asserted. Any action on the part of the insurer in behalf of the assured taken after the withdrawal and disclaimer in open court would expose it to a claim of waiver. There is nothing here to justify finding that Costa sought to purge his default but was denied unreasonably. See *Weatherwax* v. *Royal Indemnity Co.* 250 N. Y. 281.

We are unable to find that the action of the defendant or its attorneys was collusive or taken in bad faith. The decrees for the plaintiffs are based upon an incorrect ruling of law, and, in substance, require actual knowledge by the assured

of the demand for coöperation although what could be found to be all reasonable means of informing him have been used. Since the rights of the plaintiffs rise no higher than those of the assured, and it could have been found that the assured had lost his rights under the policy, we think the decrees should be reversed and the cases stand for further hearing.

*Ordered accordingly.*