THOMAS L. BRESNAHAN *vs.* LUMBERMENS MUTUAL CASUALTY COMPANY.

CHARLES J. CAHILL *vs.* SAME.

Essex.   December 9, 1936. — June 29, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Insurance,* Motor vehicle liability.

Evidence warranted a finding that the operator of an automobile, a neighbor and customer of the owner, took and used it without the express consent of the owner, and a finding that there was implied consent to its use was not required, even if the owner, seeing it taken, made no attempt to stop the operator and did not immediately prosecute him for unauthorized use.

Two BILLS IN EQUITY, filed in the Superior Court on February 4, 1936.

The suits were heard by *Dillon, J.,* who reported them for determination by this court.

*J. E. Farley,* for the plaintiffs.

*J. F. Doyle,* for the defendant.

PIERCE, J.   These are two suits in equity, tried together, which arose out of the same facts and involve the same questions of law.   The suits were brought under G. L. (Ter. Ed.) c. 175, § 113, and G. L. (Ter. Ed.) c. 214, § 3 (10), to reach and apply in payment of two judgments the obligation of the defendant insurance company under a motor vehicle liability insurance policy covering the automobile which was involved in an accident whereby the plaintiffs received personal injuries.   The only issue litigated is whether or not the automobile was being operated at the time of the accident with the express or implied consent of the owner and insured, Murgardich B. Boyajian.

At the close of the evidence each plaintiff made the following request for a ruling: "That the conduct of Murgardich B. Boyajian [the owner and insured] in failing to take any steps to prevent further use of his car, deciding to permit its further use rather than to implicate his customer, Dwyer [the operator], in criminal proceedings, is binding upon the respondent and proves that the automobile in question was operated with the implied consent of the said Boyajian." The judge denied this request and made a finding that "the automobile was not taken or being used with the express or implied consent of the owner" at the time of the accident. The cases are before this court upon a report containing all the material evidence. If the finding of the judge is correct decrees are to be entered dismissing the bills. If as a matter of law the finding by the judge was not correct, then a decree is to be entered for each plaintiff in the amount of the judgment in his favor.

It cannot be said that the finding of the court below is not correct as a matter of law. The plaintiffs state the evidence upon which the parties are in agreement in substance as follows: The defendant insurance company issued to one Boyajian a motor vehicle liability policy that complied with the laws of this Commonwealth. This policy was in effect when the accident which caused the injuries to the plaintiffs occurred. At the time of the accident the automobile was being operated by one Dwyer. The plaintiffs sued Dwyer in tort for said injuries. Dwyer was represented at the trial by an attorney furnished him by the defendant insurance company. Each plaintiff recovered a judgment against Dwyer and execution duly issued thereon. These executions were not satisfied within thirty days from the date they were issued, and have not been paid. The plaintiffs, accordingly, brought these two suits in equity to reach and apply the obligation of the defendant insurance company to indemnify Dwyer under the policy issued to Boyajian.

The collective testimony of the witnesses for the plaintiffs and the defendant, shown in the report, is in agreement in the following additional points: Boyajian operated a store

known as the Bungalow Market in Newburyport, Massachusetts. Dwyer was a customer and a neighbor of Boyajian. On the day in question Boyajian left the automobile with the key in the switch in front of his house. Dwyer came there and asked Boyajian's daughter, who was then in the store, for the use of the automobile to go to Ipswich to get a part for his own automobile. Boyajian was then in the dwelling part of the house, sleeping. The daughter went into the house to get her father and he came out into the store. When they were in the store they heard the automobile start. They came out and saw the automobile just as it disappeared around the corner of Bromfield Street, headed toward Ipswich. Boyajian knew then that Dwyer had taken the automobile. He made no outcry and spoke to no person about the misappropriation of the automobile, because he was taking pity on Dwyer and did not want him, a neighbor and a customer, to go to jail. This taking of the automobile was at about 2 P.M. Later in the afternoon Dwyer, while returning from Ipswich and while operating the automobile, was involved in a collision on High Street, in Newburyport, which caused the injuries to the plaintiffs for which they recovered judgments against him. The Newburyport police investigated the accident immediately and conferred with Boyajian. They talked with him about his permission to Dwyer to use the automobile. As a result of the investigation the police brought complaints against Dwyer for drunkenness, driving under the influence of liquor, and leaving the scene of the accident after causing personal injuries. They did not bring any complaint for unauthorized use of the automobile. After this interview with the police, Boyajian was interviewed by a person representing the defendant insurance company, and, on the following morning, Boyajian took out a complaint himself charging Dwyer with unauthorized use of his automobile. At the trial on the complaint of Boyajian Dwyer was found not guilty.

The only conflict in testimony is on the issue whether or not Boyajian gave his express consent to Dwyer to use the automobile. Dwyer testified that Boyajian consented to his using the automobile on the day in question and in fact

helped him to start it.    The police officer testified that Boyajian said he gave his consent as Dwyer was a neighbor and a good customer.    Dwyer's son testified that Boyajian told him that his father had borrowed the automobile.    An iceman testified that Boyajian was in the store at the time Dwyer drove off and no outcry was made.

The judge stated: by agreement of the parties "I have reported all the material facts found by me," and, largely on the testimony of the "assured and his daughter," "I find the automobile was not taken or being used with the express or implied consent of the owner."    It is plain the judge on the reported evidence could disbelieve the testimony of Dwyer that "Boyajian came out and started the car for him and informed him that he would not need the car until around five o'clock," and it is equally plain on all the evidence that the judge, disbelieving Dwyer and believing Boyajian and his daughter, could properly find that Boyajian gave no express consent to Dwyer to use the automobile.    We think it equally plain that the judge was not bound to find an implied consent to the use of the automobile after it had been originally misappropriated, from the fact that Boyajian did not take immediate steps to arrest Dwyer when he saw the automobile being driven away by him.    *Novo* v. *Employers' Liability Assurance Corp. Ltd.* 295 Mass. 232, 234.    *Johnson* v. *O'Lalor*, 279 Mass. 10, 13.

It follows that decrees should be entered dismissing the bills in equity with costs.

*Ordered accordingly.*